UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAYDEN SUNDBERG,<br><br>  Plaintiff,<br>  v.<br><br>SHELTON SCHOOL DISTRICT NO. 309,<br><br>  Defendant. | CASE NO. 3:23-cv-05717-DGE<br><br>ORDER ON MOTION FOR DEFAULT JUDGMENT<br>(DKT. NO. 11) |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Jayden Sundberg's motion for default judgment against Defendant Shelton School District No. 309. (Dkt. No. 11.) For the following reasons, the Court DENIES the motion.

## II. BACKGROUND

**A. Procedural History**

On August 9, 2023, Plaintiff filed a complaint alleging Defendant violated the Washington Law Against Discrimination ("WLAD") and Title II of the Americans with

Disabilities Act ("ADA"). (Dkt. No. 1.) On August 10, 2023, Plaintiff corrected a filing deficiency by noting the appearance of his attorneys. (Dkt. Nos. 4–6.)

On August 31, 2023, Plaintiff filed an affidavit of service. (Dkt. No. 7.) According to the affidavit of service, a process server hand-delivered a copy of the summons, complaint, filing deficiency, and notice of correction of filing deficiency to Assistant Superintendent Brenda Trogstad on August 14, 2023 at the school district's administrative headquarters during business hours. (*Id*. at 1.)

On September 7, 2023, Plaintiff filed a motion for default. (Dkt. No. 8.) On September 13, 2023, the Clerk of the Court, finding Defendant had "failed to timely plead or otherwise defend in this action[,]" granted the motion and entered the default. (Dkt. No. 10 at 1.)

On October 2, 2023, Plaintiff filed the instant motion for default judgment, requesting $4 million in damages. (Dkt. No. 11.)

**B. Factual Background**

The following facts are from the Complaint (Dkt. No. 1) and, for the purposes of this motion, are taken as true:

Plaintiff was a high school student with Autism Spectrum Disorder, Intermittent Explosive Disorder, and Attention-Deficit/Hyperactivity Disorder. (*Id*. at 4.) He had an Individualized Education Program with his school, whereby his teachers and the administration were aware of his disabilities. (*Id*.) At the time of the below-described incident, Defendant "knew that [Plaintiff's] disability made it more difficult for him to deescalate confrontations on his own, that such confrontations may become physical, and that [Plaintiff] is 'likely' to respond physically where the other person presses the escalation." (*Id*.) Defendant had a policy that

"[a]ll staff members [must] intervene when witnessing or receiving reports of harassment, intimidation, or bullying." (*Id*. at 5.)

Plaintiff identifies as queer and gender fluid. (*Id*. at 4.) Defendant was aware of his sexual orientation and gender identity. (*Id*.)

On September 20, 2021, another student called Plaintiff a "fag", which Plaintiff promptly reported to the school's security officer in the presence of other school administrators, including the principal. (*Id*. at 7.) The security officer transcribed the statement onto a form, but he and the other administrators "took [no further] action in response to learning that [the other student] was calling [Plaintiff] a 'fag.'" (*Id*.)

Plaintiff then went to his special education teacher and told her about the harassment. (*Id*.) Plaintiff "reported to [the teacher] . . . : 'If he says it one more time, I'm going to beat him up.'" (*Id*.) Plaintiff alleges the behavior he warned of is "consistent with his [Intermittent Explosive Disorder] diagnosis[.]" (*Id*.) The teacher "did nothing to intervene." (*Id*.) Later that day, Plaintiff went back to this same teacher and told her he was still upset about the incident, and that "the same student had pressed him again." (*Id*.) The teacher "again did nothing to intervene." (*Id*.) Plaintiff asserts it "was a feasible option for Shelton High School to have a paraeducator escort [him] between classes[,]" and that there was a designated paraeducator at the time responsible for escorting students between classes. (*Id*. at 8.)

Later that day, the same student called Plaintiff a "fucking faggot" in passing between classes. (*Id*.) This caused an altercation between the students, resulting in the other student stabbing Plaintiff six times with a knife, including in his neck. (*Id*.) His wounds were very near fatal. (*Id*.)

ORDER ON MOTION FOR DEFAULT JUDGMENT
(DKT. NO. 11) - 3

Citing to another incident of harassment occurring a few days prior to the above-described incident, Plaintiff asserts another student had bullied him because of his sexual orientation. He alleges that, upon reporting the incident, school staff similarly did not intervene, even though they were already investigating a separate altercation involving that student. (*Id*. at 5–6.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Sepulveda v. Cong*, 2020 WL 7232900, at *2 (N.D. Cal. Nov. 9, 2020), *report and recommendation adopted as modified sub nom. Sepulveda v. Hien Quyen Cong*, 2020 WL 7227202 (N.D. Cal. Dec. 8, 2020). Whether to enter a judgment lies within the court's discretion. *Id.* (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("*Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted).

Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*,

826 F.2d 915, 917–18 (9th Cir. 1987).  Where a default judgment is granted, the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. 54(c).

### IV.    DISCUSSION

#### A. Jurisdictional Requirements

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case.  *In re Tuli*, 172 F.3d at 712 ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties").

In his complaint, Plaintiff alleges a violation of a federal statute, the ADA, 42 U.S.C. §12101 et seq.  (Dkt. No. 1 at 13–15.)  The Court thus has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331(a), and supplemental jurisdiction over the state-law WLAD claims under 28 U.S.C. § 1367.

The Court has personal jurisdiction over the Defendant, as it is a public school district located in Shelton, Washington.  Venue is also proper because the school district is located in this district.

Finally, service of process was proper.  A plaintiff may properly serve a defendant "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located[.]"  Fed. R. Civ. P. 4(e)(1).  Under Washington law, a plaintiff may properly serve a defendant school district "by leaving the [summons and a copy of the complaint] in [the superintendent's] office with an assistant superintendent . . . during normal business hours."  Wash. Rev. Code. § 4.28.080(3).  Using a qualified process server,

Plaintiff served Defendant by handing a copy of the necessary paperwork to Assistant Superintendent Brenda Trogstad at the office of the superintendent during normal business hours. (Dkt. No. 7 at 1.)  Thus, Plaintiff met the requirements for service.

All jurisdictional requirements being met, the Court addresses the motion for default judgment on the merits.

**B. *Eitel* Factors**

    1.  <u>Eitel Factor 1: Possibility of Prejudice to Plaintiff</u>

If Plaintiff is not granted relief in this case, he will likely be left without other recourse. Such potential prejudice to Plaintiff weighs in favor of granting a default judgment. *See PepsiCo., Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

    2.  <u>Eitel Factors 2 and 3: Meritorious Claim Alleged in Complaint</u>

The second and third *Eitel* factors are generally considered together.  *See Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014).  These factors focus on the merits of the substantive claims and the sufficiency of the complaint.  *Eitel*, 782 F.2d at 1471–72. "Together, [they] require that Plaintiff assert claims upon which it may recover." *IO Grp. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003)).

Plaintiff puts forth two claims: violations of the WLAD and the ADA.[1]

---

[1] While Defendant may have had valid qualified immunity arguments, qualified immunity is "an affirmative defense that the government has the burden of pleading and proving." *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017).  Because Defendant provided no response to Plaintiff's complaint, let alone a pleading of qualified immunity, the Court does not consider it as a defense to this action.

ORDER ON MOTION FOR DEFAULT JUDGMENT
(DKT. NO. 11) - 6

         i.   Washington Law Against Discrimination

The WLAD protects "the right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement," Wash. Rev. Code § 49.60.030(1)(b), and further provides that it is an unfair practice to discriminate in a place of public accommodation. *See* Wash. Rev. Code § 49.60.215. To state a prima facie public accommodations claim under the WLAD, a plaintiff must allege that:

> (1) the plaintiff is a member of a protected class, (2) the defendant's establishment is a place of public accommodation, (3) the defendant discriminated against the plaintiff when it did not treat the plaintiff in a manner comparable to the treatment it provides to persons outside that class, and (4) the plaintiff's protected status was a substantial factor that caused the discrimination.

*W.H. v. Olympia School District*, 465 P.3d 322, 325 (Wash. 2020) (citing *Floeting v. Group Health Cooperative*, 434 P.3d 39 (Wash. 2019) and *Fell v. Spokane Transit Authority*, 911 P.2d 1319 (Wash. 1996)).

"[S]chool districts are subject to strict liability for discrimination by their employees in violation of the WLAD in places of public accommodation[.]" *W.H.*, 465 P.3d at 326. Thus, if Defendant's employees violated the WLAD, Defendant is strictly liable.

        a.   Plaintiff adequately alleges he is a member of protected classes under the WLAD.

The WLAD "bar[s] discrimination on the basis of . . . sexual orientation, and disability[.]" *Olympus v. Armstrong*, 2023 WL 3818536 (W.D. Wash. June 5, 2023) (quoting *Woods v. Seattle's Union Gospel Mission*, 481 P.3d 1060, 1064 (Wash. 2021) (internal quotation marks omitted)). Plaintiff asserts that he is a member of two protected classes under the WLAD. The Court agrees.

ORDER ON MOTION FOR DEFAULT JUDGMENT
(DKT. NO. 11) - 7

First, Plaintiff alleges he "is a member of a protected class recognized by the WLAD based on his sexual orientation." (Dkt. No. 1 at 9.)  The WLAD defines sexual orientation as "heterosexuality, homosexuality, bisexuality, and gender expression or identity" and gender identity as "having or being perceived as having a gender identity, self-image, appearance, behavior, or expression, whether or not that gender identity, self-image, appearance, behavior, or expression is different from that traditionally associated with the sex assigned to that person at birth." Wash. Rev. Code. § 49.60.040(26).  In his complaint, Plaintiff alleges he "identifies as queer and gender fluid and did so during his time as a student in the District[.]" (Dkt. No. 1 at 9.)  He was also "perceived as homosexual, bisexual, or queer by his instructors and peers, including those who harassed" him.  (*Id*.)  Plaintiff meets the pleading requirements to show he is a member of this protected class.

Second, Plaintiff alleges he "is a member of a protected class recognized by the WLAD based on his disabilities."  (*Id*.)  The WLAD defines a disability to include any "mental . . . impairment that: (i) Is medically cognizable or diagnosable; or (ii) Exists as a record or history; or (iii) Is perceived to exist whether or not it exists in fact."  Wash. Rev. Code. § 49.60.040(7)(a).  It further defines "impairment" to include "[a]ny mental, developmental, traumatic, or psychological disorder, including but not limited to cognitive limitation, organic brain syndrome, emotional or mental illness, and specific learning disabilities."  Wash. Rev. Code § 49.60.040(7)(c)(ii).

In particular, Plaintiff alleges he "has been diagnosed with Autism Spectrum Disorder/Asberger's Syndrome, Intermittent Explosive Disorder, and Attention-Deficient/Hyperactivity Disorder" and that "each of these conditions was medically cognizable and diagnosed and existed as a record or history." (Dkt. No. 1 at 10.)  He alleges Defendant and

1  its employees "perceived [Plaintiff] as having these disabilities as the diagnoses were known to

2  the [Defendant's] employees, including [Plaintiff's] educators." (*Id*.)  Again, Plaintiff clearly

3  meets his pleading requirements for this protected class.

4        Thus, this element is satisfied.

5            b.   The school is a place of public accommodation.

6      Public schools are places of public accommodation for the purpose of the WLAD.  *See*

7  Wash. Rev. Code § 49.60.040(2); *see also* Wash. Admin. Code § 162–28–030.  Plaintiff's high

8  school is a public high school in Washington State.  (Dkt. No. 1 at 3.)  This element is met.

9            c.   Plaintiff fails to allege he was not provided services comparable to those

10                provided to non-disabled students.

11     Plaintiff alleges Defendant "knew that [he] was experiencing harassment or bullying

12 based on his sexual orientation and weight, in violation of [Defendant's] rules of student

13 conduct." (*Id*. at 10.)  He asserts that "[t]hough the [Defendant's] own policies require staff

14 intervention upon reports of potential harassment, intimidation, or bullying, multiple [of

15 Defendant's] staff did not intervene upon receiving reports that multiple students were directing

16 demeaning comments and offensive anti-queer slurs at [Plaintiff]." (*Id*. at 10–11.)  Defendant's

17 violation of its own policy in failing to take action to defend Plaintiff does not necessarily

18 indicate Defendant treated Plaintiff differently from students not in a protected class.  Plaintiff

19 does not allege that Defendant enforced the policy when it came to harassment of other, non-

20 protected students.  It could be the case that the school district is failing to stop bullying of all

21 students, regardless of their protected-class status.  Plaintiff's complaint does not allege

22 otherwise.

ORDER ON MOTION FOR DEFAULT JUDGMENT
(DKT. NO. 11) - 9

Plaintiff also alleges that, a few days prior to the incident, he "told the Assistant Principal John Bryz-Gornia that another student—"L.D."—had called Sundberg a 'fat gay dude'" and that this administrator was "investigating a physical altercation involving L.D. and another student that occurred on September 14, 2021." (Dkt. No. 1 at 5.)  Plaintiff alleges the administrator "took no action in response to learning that [he] was being called a 'fat gay dude' by another student." (Dkt. No. 1 at 6.)  It is clear the Defendant's employees were investigating some incidents of harassment—that of L.D. and another student—but not others—that of L.D. bullying Plaintiff.  What is not clear, however, is whether the other students whose harassment the school <u>did</u> investigate were also in a protected class.  The Complaint as written makes no allegations that the other students were not in a protected class, and so the Complaint remains bare of disparate treatment claims.

Plaintiff similarly alleges that on the day of the incident, he reported to his special education teacher "that a student was calling him a 'faggot'". (Dkt. No. 1 at 7.)  Plaintiff alleges that this teacher not only "did nothing to intervene" when he twice came to her about the abuse, but that she "admonished him that he 'can't keep telling people he is going to beat them up.'" (Dkt. No. 1 at 7.)  The Court sees the disparate treatment between students: the teacher here chose to reprimand Plaintiff for bullying but chose not to investigate or equally reprimand Plaintiff's bully.  However, again, the Complaint fails to allege that the other student was not part of a protected class.

Although the Complaint alludes to the Defendant disciplining students differently, it does not sufficiently allege Defendant provided these unequal services to non-protected class students.

ORDER ON MOTION FOR DEFAULT JUDGMENT
(DKT. NO. 11) - 10

      d.  Plaintiff's disability was not a substantial factor in causing the discrimination.

Because Plaintiff has not sufficiently alleged discriminatory treatment occurred, he necessarily fails to allege his disability was a substantial factor in the discrimination.  Thus, this element is not met.

Accordingly, as currently alleged, Plaintiff has failed to plead his WLAD claim that the Defendant—through its employees—discriminated against Plaintiff on the basis of his membership of a protected class.

      e.  WLAD Third Party Harassment

Plaintiff separately asserts that "under the WLAD a third party's harassment of a plaintiff is imputed to a place of public accommodation where the place of public accommodation (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action."  (Dkt. No. 1 at 12) (citing *LaRose v. King Cnty*, 437 P.3d 701 (2019)).  Plaintiff alleges Defendant "knew or should have known that [Plaintiff] was being harassed by students under the District's supervision based on his protected characteristics, including because [Plaintiff] himself repeatedly reported the same to District employees."  (*Id*. at 13.)  Plaintiff alleges that because Defendants "failed to take reasonably prompt and adequate corrective action to protect Sundberg from the discriminatory harassment[,]" there was a "very real likelihood that [the verbal harassment] would lead to physical violence."  (*Id*.)  Plaintiff cites to *LaRose v. King County*, which held that "under certain circumstances, an employer may be subject to liability for a hostile work environment claim based on a nonemployee's harassment of an employee in the workplace[.]" 437 P.3d 701, 707 (Wash. Ct. App. 2019).  In that case, the state court of appeals identified that the WLAD allows a "nonemployee's harassment of an employee in the workplace [to] be imputed to an employer if the employer '(a) authorized, knew,

ORDER ON MOTION FOR DEFAULT JUDGMENT
(DKT. NO. 11) - 11

or should have known about the harassment and (b) failed to take reasonably prompt and adequate corrective action.'" *Id*.

*LaRose* is inapposite here as its holding focused on sexual harassment supporting a hostile work environment claim. Where *LaRose* deals specifically with sexual harassment in the workplace resulting in a hostile work environment and the duty of protection from an employer, the case at bar puts forth no such employment relationship. Instead, the Court looks to its prior holding in *L.K.M v. Bethel School District*. 2020 WL 7075209 (W.D. Wash. Dec. 3, 2020). There, the Court ruled that a school district was not liable for the discriminatory acts of another student against the plaintiff student because the harassing student was "not an employee or agent of the District." *Id*. at *13. The Court held that "[b]ecause no employer-employee or employer-agent relationship has been asserted, let alone established [between the harassing student and the defendant district], Plaintiffs cannot establish that the District discriminated against [the plaintiff] on the basis of her sex." *Id*.

The relevant facts to Plaintiff's third-party harassment theory are almost identical to *L.K.M.* Here too, Plaintiff alleges the Defendant is liable for the discriminatory acts of another student against the Plaintiff. However, Plaintiff cites to no authority showing that such discrimination can be imputed to a defendant school district in a non-employment context. The Court, therefore, finds Plaintiff has failed to adequately plead a WLAD violation on this basis.

Accordingly, the Court finds Plaintiff has failed to state a claim under the WLAD.

ii. Americans with Disabilities Act

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132.  To establish a violation of Title II, a plaintiff must show that (1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was because of her disability.  *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (citing *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.1997)).

Additionally, "[t]o recover monetary damages under Title II of the ADA . . . , a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

Defendant is a public school district and is undoubtedly a public entity controlled by Title II of the ADA.  *K.M. ex rel. Bright v. Tustin Unified School District*, 725 F.3d 1088 (9th Cir. 2013).  Like the WLAD, it is also vicariously liable for the actions of its employees under the ADA.  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001).

a. Plaintiff adequately alleges he has a disability under the ADA.

The ADA defines the term "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A).  Federal regulations promulgated under the ADA indicate that mental impairments include "[a]ny mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 28 C.F.R. § 36.104 (2000).  In determining whether a person has a mental impairment constituting a disability under the ADA, courts must examine whether: "(1) [the] individual suffers from physical or mental impairment, (2) impairment affects major life activity, (3) and impairment substantially limits that major life activity." *Matthews v. NCAA*, 179 F.Supp.2d 1209, 1223 (E.D. Wash. 2001).

The Ninth Circuit recognizes that "communicating with others" and "interacting with others" are major life activities as defined under the ADA. *Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1060 (9th Cir., 2005) ("Interacting with others" is a major life activity); *McAlindin v. Cnty. of San Diego*, 192 F.3d 1226, 1233–34 (9th Cir.1999) (same); *Fraser v. Goodale*, 342 F.3d 1032, 1044 (9th Cir.2003) (communicating with others is a major life activity).

Plaintiff's alleged disabilities, Autism Spectrum Disorder, Intermittent Explosive Disorder, and Attention-Deficit/Hyperactivity Disorder appear to meet these criteria. Plaintiff alleges his disabilities "made it difficult for him to manage his anger when mocked, and that he was likely to respond physically when pressed by his harassers." (Dkt. No. 1 at 2) (internal quotations omitted). Plaintiff further asserted that his disabilities "made it more difficult for him to deescalate confrontations on his own, and that such confrontations may become physical, and that [he] is likely to respond physically where the other person presses the escalation." (*Id*. at 4) (internal quotations omitted). The Court finds a disorder-induced inability to control oneself from becoming violent in stressful social situations is an impairment of a major life activity. Plaintiff has thus sufficiently alleged he has a qualifying disability.

    b. Plaintiff does not adequately allege he was discriminated against with regard to the school's services and that this discrimination was because of Plaintiff's disability.

Plaintiff alleges Defendant's employees "who received reports that [Plaintiff] was being harassed or bullied based on his protected characteristics failed to afford [Plaintiff] the services and treatment available to all other non-disabled students, by choosing not to intervene." (*Id*. at 14.) Plaintiff contends the "very fact that [his] disability manifested itself as aggression, coupled

ORDER ON MOTION FOR DEFAULT JUDGMENT
(DKT. NO. 11) - 14

1  with [his] stature, is the same reason that District employees did not intervene, investigate,
2  monitor, or take steps to protect [Plaintiff] from his harassers." (*Id*.)
3      As discussed in above *supra* IV.B.2.i.c, Plaintiff fails to allege that the services he was
4  not provided—protection from bullying—were services the school was otherwise providing to
5  students without a disability.  In *Wormuth v. Lammersville Union School District*, the court
6  found discrimination where a bullying student was "suspended the day after those females were
7  allegedly harassed[,]" but faced no suspension when Plaintiff, a male, was harassed.  305
8  F.Supp.3d 1108, 1119 (E.D. Cal. 2018).  There, the complaint alleged a difference in treatment
9  for some category of students—females—versus others—males.  *Id*.  The Complaint here does
10 not, as written, allege facts showing that the school was providing anti-bullying protection to
11 some students but not others based on their disability status.  In failing to intervene upon notice
12 of harassment, the school failed to provide a service to Plaintiff; however, it is unclear that this
13 service was not provided on the basis of his disability, and thus unclear that discrimination
14 occurred.
15      Accordingly, this element is not met.
16          c.  Plaintiff alleges Defendant intentionally discriminated against him, but this
17              issue is moot at this time.
18     Plaintiff alleges Defendants "acted intentionally, knowing that harm to [Plaintiff's]
19 federally protected rights—including equal treatment and nondiscrimination on the basis of
20 protected characteristics—was substantially likely, and failing to act upon that likelihood." (Dkt.
21
22
23
24

ORDER ON MOTION FOR DEFAULT JUDGMENT
(DKT. NO. 11) - 15

No. 1 at 14.) However, because Plaintiff has not sufficiently alleged discrimination on the basis of his disability occurred, whether that discrimination was intentional is MOOT.[2]

Accordingly, the Court finds Plaintiff has not adequately pled the ADA claim.

Plaintiff having failed to state a claim under both the WLAD and the ADA, *Eitel* Factors 2 and 3 weigh heavily against entry of default.

### 3. Eitel Factor 4: The Sum of Money at Stake

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). "When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored." *Freligh v. Roc Asset Solutions, LLC*, 2016 WL 3748723, at *6 (N.D. Cal. June 8, 2016) (citing *Eitel*, 782 F.2d at 1472). "However, when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

Having concluded Plaintiff failed to plead all the elements of his claims, *supra* IV.B.2, the significant damages Plaintiff seeks are not justified at this time. This factor, therefore, weighs against entry of a default judgment

---

[2] Without ruling on the issue of intentionality, the Court notes Plaintiff alleges he gave notice to multiple school officials, including a security officer, the principal, and his special education teacher, that he was being harassed and that an altercation might ensue if no intervention took place. (Dkt. No. 1 at 7.) According to the Complaint, not a single school official intervened, deliberately choosing to ignore Plaintiff's pleas for support—in contravention of official policy (*id*. at 5)—on the basis that he himself was an aggressor because of his disability's symptoms and his stature. (*Id*. at 6–7.)

ORDER ON MOTION FOR DEFAULT JUDGMENT
(DKT. NO. 11) - 16

      4.   <u>Eitel Factor 5: Low Possibility of Dispute Concerning Material Facts</u>

"Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is only a remote possibility that any genuine issue of material fact exists." *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) *accord Philip Morris USA, Inc.*, 219 F.R.D, at 500; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  As discussed *supra* IV.B.2, Plaintiff has not provided the Court with well-pleaded allegations supporting his claims as to discrimination.  Thus, the Complaint as written still creates a question of fact as to whether discrimination occurred.  This factor thus weighs against default judgment entry.

      5.   <u>Eitel Factor 6: Excusable Neglect</u>

The Court finds that there is no evidence of excusable neglect.  Plaintiff served Defendants with the summons and Complaint. (Dkt. No. 7.)  Despite ample notice of this lawsuit, Defendant has failed to appear in this action.  Thus, the record supports a conclusion that Defendant has chosen not to defend this action, and not that the default resulted from excusable neglect.  Accordingly, this *Eitel* factor favors the entry of a default judgment.

      6.   <u>Eitel Factor 7: Strong Policy Favoring Decisions on the Merits</u>

Defendant was given an opportunity to have this dispute decided on the merits but did not respond to the Complaint.  Defendant's failure to respond makes a decision on the merits impractical.  The policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits is outweighed by the other *Eitel* factors.

7. <u>On Balance, the *Eitel* Factors Do Not Support Default Judgment</u>

Given the Complaint fails to state a claim of discrimination under both the WLAD and the ADA, the factors viewed together weigh against default judgment.  The Court thus finds default judgment inappropriate.

## V.     CONCLUSION

Having reviewed the motion and the remainder of the record, the Court DENIES Plaintiff's motion for default judgment (Dkt. No. 11).  Should Plaintiff so choose, he may file an amended complaint curing any deficiencies identified in this Order no later than May 29, 2024.

Dated this 29th day of April 2024.

David G. Estudillo
United States District Judge