1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

| | |
|---|---|
| JAYDEN SUNDBERG, | CASE NO. 3:23-cv-05717-DGE |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT (DKT. NO. 32) AND DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGEMENT AS MOOT (DKT. NO. 20) |
| v. | |
| SHELTON SCHOOL DISTRICT NO. 309, | |
| Defendant. | |

## I      INTRODUCTION

Before the Court is a motion filed by Defendant Shelton School District No. 309 to set aside the Clerk's entry of default.  (Dkt. No. 32.)  Upon careful consideration of the briefing filed by both parties, the Court concludes that oral argument is not required and GRANTS the motion for the reasons set forth below.  *See* Fed. R. Civ. P. 78; LCR 7(b)(4).  Accordingly, Plaintiff Jayden Sundberg's renewed motion for default judgement (Dkt. No. 20) is DENIED as moot.

## II      BACKGROUND

On August 9, 2023, Plaintiff filed a complaint alleging that Defendant violated the Washington Law Against Discrimination ("WLAD") and Title II of the Americans with Disabilities Act ("ADA"). (Dkt. No. 1.) On August 10, 2023, Plaintiff corrected a filing deficiency by noting the appearance of his attorneys. (Dkt. Nos. 4–6.)

On August 31, 2023, Plaintiff filed an affidavit of service. (Dkt. No. 7.) According to the affidavit of service, a process server hand-delivered a copy of the summons, complaint, filing deficiency, and notice of correction of filing deficiency to Assistant Superintendent Brenda Trogstad on August 14, 2023, at the school district's administrative headquarters during business hours. (*Id*. at 1.)

On September 7, 2023, Plaintiff filed a motion for default. (Dkt. No. 8.) On September 13, 2023, the Clerk of the Court, finding Defendant had "failed to timely plead or otherwise defend in this action," granted the motion and entered the default. (Dkt. No. 10 at 1.)

On October 2, 2023, Plaintiff filed a motion for default judgment, requesting $4 million in damages. (Dkt. No. 11.) On April 29, 2024, the Court denied Plaintiff's motion for default judgment because the Court determined Plaintiff had failed to state a claim under both the WLAD and ADA. (Dkt. No. 18.) The Court granted Plaintiff leave to file an amended complaint curing the deficiencies identified in the Court's Order.

On May 28, 2024, Plaintiff filed an amended complaint (Dkt. No. 19) and a second motion for default judgement. (Dkt. No. 20.) The complaint asserts that Defendant violated the WLAD and the ADA by "treating Sundberg—and his complaints of harassment—differently based on his disabilities and sexual orientation." (Dkt. No. 19 at 2.) It also argues that the

1  school district is vicariously liable under the WLAD for the violent harassment Sundberg

2  experienced at the hands of a fellow student.  (*Id*. at 13–15.)

3        Also on May 28, 2024, Defendant's attorney made an appearance on the record.  (Dkt.

4  No. 21.)  Defendant subsequently filed a response to Plaintiff's second motion for default

5  judgement on June 6, 2024 (Dkt. No. 25); an answer to Plaintiff's amended complaint on June

6  11, 2024 (Dkt. No. 26); and the instant motion to set aside default and in opposition to Plaintiff's

7  second motion for default on July 5, 2024.

8  **III**      **LEGAL STANDARD**

9        Rule 55(c) of the Federal Rules of Civil Procedure provides that the Court "may set aside

10  an entry of default for good cause."  Fed. R. Civ. P. 55(c).  "The 'good cause' standard that

11  governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating

12  a default judgment under Rule 60(b)."  *Franchise Holding II, LLC v. Huntington Restaurants*

13  *Grp., Inc*., 375 F.3d 922, 925 (9th Cir. 2004).  "To determine 'good cause', a court must

14  'consider[] three factors: (1) whether [the party seeking to set aside the default] engaged in

15  culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3)

16  whether reopening the default judgment would prejudice' the other party."  *United States v.*

17  *Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (citing

18  *Franchise Holding*, 375 F.3d at 925–926).  The moving party bears the burden "of showing that

19  any of these factors favor[] setting aside the default."  *Franchise Holding*, 375 F.3d at 926.

20        The three-factor standard is "disjunctive," meaning that the court may decline to set aside

21  the default if it finds that any one of the factors is true.  *Mesle*, 615 F.3d at 1091; *Brandt v. Am.*

22  *Bankers Ins. Co*., 653 F.3d 1108, 1111 (9th Cir. 2011).  "The court's discretion is especially

23  broad where . . . it is entry of default that is being set aside, rather than a default judgment."

24

*Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986). When evaluating whether to set aside a default, courts should consider that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). Accordingly, the "rules for determining when a default should be set aside are solicitous towards movants." *Mesle*, 615 F.3d at 1089. District courts should "resolve[] all doubt in favor of setting aside the entry of default and deciding the case on its merits." *O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994).

## IV    DISCUSSION

### A. Culpable Conduct

A "defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Alan Neuman, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). "[T]o treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Mesle*, 615 F.3d at 1092 (quoting *TCI Group*, 244 F.3d at 697). Conduct is "typically" considered "culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI Group*, 244 F.3d at 698 (collecting cases). Thus, "simple carelessness is not sufficient to treat a negligent failure to reply as inexcusable," unless another equitable factor like prejudice weighs heavily towards denying the motion. *Mesle*, 615

1    F.3d at 1092.  "A district court may exercise its discretion to deny relief to a defaulting defendant

2    based solely upon a finding of defendant's culpability, but need not."  *Brandt*, 653 F.3d at 1112.

3    Defendant's behavior does not rise to the level of "culpable conduct."  Defendant asserts

4    that its failure to answer "was the result of inadvertence and oversight" on the part of two school

5    administrators—Ms. Trogstad and Superintendent Jesse Wyeth.  (Dkt. No. 32 at 8.)  Mr. Wyeth

6    declares that: "On or about August 14, 2023, Assistant Superintendent Brenda Trogstad hand

7    delivered to me a summons and complaint in this matter.  When Ms. Trogstad gave me these

8    documents, my assumption was that Ms. Trogstad had forwarded the documents to the

9    appropriate individuals, specifically the District's attorney and the District's risk pool[.]" (Dkt.

10   No. 37 at 1.)  Because "Mr. Wyeth mistakenly believed that Ms. Trogstad had already provided

11   the Summons and Complaint to SSD's attorney and third-party risk administrator (Clear Risk

12   Solutions)," no attorney was assigned to the case and Defendant never answered.  (Dkt. No. 32 at

13   8.)  The misunderstanding that Ms. Trogstad and Mr. Wyeth attest to indicates neglect rather

14   than calculated gamesmanship.  There is no evidence that Defendant failed to answer willfully,

15   in bad faith, or with devious intent.  *See TCI Group*, 244 F.3d at 698.

16   Plaintiff argues that the length of Defendant's delay ought to create a presumption of

17   culpability, in part because Defendant anticipated the instant lawsuit.  (Dkt. No. 45. at 22–24.)

18   Considering Defendant's good faith explanation, however, the Court does not find that the length

19   of time indicates any intention to manipulate the legal process.  *See Mesle*, 615 F.3d at 1093.

20   Defendant asserts that it only became aware of the entry of default when Defendant's attorney,

21   Michael McFarland, "came across this Court's April 29, 2024, Order on Motion for Default

22   Judgement," while doing research for a separate case.  (Dkt. No. 43 at 1.)  Mr. McFarland

23   declares that he "immediately" contacted Defendant and appeared on the record the day he was

24

ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT (DKT. NO. 32) AND
DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGEMENT AS MOOT (DKT. NO. 20) - 5

1   retained.  (*Id*. at 2–3.)  The rapidity with which Defendant did appear once it received actual

2   notice that no attorney had ever been contacted further indicates that Defendant's failure to

3   answer was not intentional.

4          Thus, because the record does not contain evidence that Defendant intentionally failed to

5   respond, its conduct is not culpable.  The first factor weighs in favor of finding good cause to set

6   aside the entry of default.

7   **B.  Meritorious Defense**

8          To meet the meritorious defense standard, "[a] defendant seeking to vacate a default

9   judgment must present specific facts that would constitute a defense."  *Mesle*, 615 F.3d at 1094

10  (internal citations and quotations omitted).  "But the burden on a party seeking to vacate a

11  default judgment is not extraordinarily heavy."  *Id*.  Indeed, all that a defendant must do is

12  "allege sufficient facts, that, if true, would constitute a defense."  *Id*.  At this stage, courts are not

13  to determine whether the factual allegations are true.  *Id*.

14         To state a prima facie public accommodations claim under the WLAD, a plaintiff must

15  show that:

16         (1) the plaintiff is a member of a protected class, (2) the defendant's establishment
       is a place of public accommodation, (3) the defendant discriminated against the
17     plaintiff when it did not treat the plaintiff in a manner comparable to the treatment
       it provides to persons outside that class, and (4) the plaintiff's protected status was
18     a substantial factor that caused the discrimination.

19  *W.H. v. Olympia School District*, 465 P.3d 322, 325 (Wash. 2020) (citing *Floeting v. Group*

20  *Health Cooperative*, 434 P.3d 39, 41 (Wash. 2019)).  Similarly, to establish an ADA violation, a

21  plaintiff must show that "(1) she is a qualified individual with a disability; (2) she was excluded

22  from participation in or otherwise discriminated against with regard to a public entity's services,

23

24

ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT (DKT. NO. 32) AND
DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGEMENT AS MOOT (DKT. NO. 20) - 6

1   programs, or activities, and (3) such exclusion or discrimination was by reason of her disability."

2   *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

3           Accordingly, to support its first WLAD claim and its ADA claim, Plaintiff alleges that

4   Defendant "enforces its rules and policies against harassment, intimidation, and bullying when

5   the potential or actual victims are heterosexual or non-disabled" but that "the district did not

6   enforce its rules and policies against harassment, intimidation, and bullying when . . . [allegedly

7   non-disabled, heterosexual students] harassed, intimidated or bullied Sundberg." (Dkt. No. 19 at

8   10.) The complaint describes Defendant intervening and taking action to protect an allegedly

9   non-disabled, heterosexual student while it failed to do so for Plaintiff. (*Id*. at 7.)

10          Defendant presents the defense that "Mr. Sundberg cannot establish that he was treated in

11  a manner different than the treatment provided to students outside his protected classes." (Dkt.

12  No. 32 at 10.) Defendant further alleges that Mr. Sundberg is unable establish that his protected

13  status was a substantial factor or but for cause of any alleged discrimination. (*Id*. at 10, 20.) To

14  support these defenses, Defendant asserts that four out of the five students named in Plaintiff's

15  complaint were also disabled. (*Id*. at 10.) Thus, Defendant argues that it was factually

16  impossible for the school district to treat Plaintiff differently from non-protected students

17  because those students were members of the same protected class as Plaintiff. (*Id*. at 11, 18.)

18  Defendant substantiates this argument with a Declaration from Bruce Kipper, the Principal of

19  Shelton High School, amongst other filings.[1] Defendant further argues that it was not aware of

20  the sexual orientation of the students in the complaint and thus could not have treated them

21

22  _____

23  [1] In his Declaration, Mr. Kipper includes a table showing that all but one of the five students
    involved in the incidents described in Plaintiff's complaint were on "504 Plans." (Dkt. No. 39 at
    3.) As Defendants state, "504 Plans provide accommodations pursuant to Section 504 of the

24  Rehabilitation Act to students with identified disabilities." (Dkt. No. 32 at 11 n.4.)

ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT (DKT. NO. 32) AND
DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGEMENT AS MOOT (DKT. NO. 20) - 7

1 differently from Plaintiff based on sexuality.  (*Id*. at 10.)  Additionally, Defendant describes

2 taking disciplinary action against four out of the five students named in Plaintiff's complaint,

3 which suggests that the school treated complaints of harassment similarly.  (*Id*. at 15) ("All but

4 one of the students . . . received discipline and that student was 'disabled' and therefore in Mr.

5 Sundberg's Protected class.").   Instructors at the school further attest that they intervened to

6 assist Plaintiff when he reported bullying.[2]  (*Id*. at 18–19.)

7          If, as Defendant pleads, the district did not discriminate against Plaintiff based on his

8 disability or sexual orientation status, Plaintiff cannot make out a prima facie case under the

9 WLAD or the ADA.  Thus, Defendant's arguments, which are supported by the alleged facts

10 discussed *supra*, serve as a meritorious defense to Plaintiff's WLAD and ADA claims.  *See*

11 *Mesle*, 615 F.3d at 1094.

12          In its second amended complaint, Plaintiff continues to press the argument that

13 Defendant is vicariously liable under the WLAD (Dkt. No. 32 at 13–15), despite this Court

14 having found in its recent order that Plaintiff's theory ran contrary to the holding in *L.K.M v.*

15 *Bethel School District*.  (*See* Dkt. No. 11 at 12, discussing *L.K.M v. Bethel School District* 2020

16 WL 7075209 (W.D. Wash. Dec. 3, 2020).)  As Defendants emphasize, Plaintiff's theory of third-

17 party liability has "never [been] recognized by any Washington court."  (Dkt. No. 32 at 16.)

18 This would constitute a complete defense to Plaintiff's novel argument.  *See Mesle*, 615 F.3d at

19 1094.

20

21

22 _____

[2] Teachers not only investigated the alleged bullying, but also were "putting together a plan to
23 address Mr. Sundberg's reported concerns," including a review of Plaintiff's IEP "to determine
whether additional accommodations were necessary to support Mr. Sundberg."  (Dkt. No. 32 at
24 12.)

1    Accordingly, defendant has satisfied the minimal burden required to meet the meritorious

2    defense requirement and this factor weighs in favor of setting aside the entry of default.

3    **C. Prejudice**

4    "To be prejudicial, the setting aside of a judgment must result in greater harm than simply

5    delaying resolution of the case." *TCI Group*, 244 F.3d at 701.  It follows that "merely being

6    forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default

7    judgement." *Id.*  A party is prejudiced when its ability to pursue its claim is actively "hindered."

8    *Id.*  This entails "delay [that] must result in tangible harm such as loss of evidence, increased

9    difficulties of discovery, or greater opportunity for fraud or collusion." *Id.*  (quoting *Thompson

10    v. American Home Assur. Co*., 95 F.3d 428, 433–34 (6th Cir. 1996)).

11    While it is true that "Plaintiff and the Court have expended significant time and

12    resources," there is nothing in the record indicating that the delay has actively prejudiced

13    Plaintiff.  (Dkt. No. 45 at 21.)  As Defendant notes, "all the employees who Mr. Sundberg

14    alleges acted discriminatorily toward him have submitted declarations in this case, establishing

15    their availability as witnesses." (Dkt. No. 47 at 14–15.)  There does not appear to be a risk of lost

16    evidence, fraud, or collusion.  *See TCI Group*, 244 F.3d at 701.  Because "the mere possibility of

17    prejudice from delay, which is inherent in every case" is not a sufficient basis for denying a

18    motion to set aside default, the Court finds that this factor is met.  *Bateman v. U.S. Postal Serv*.,

19    231 F.3d 1220, 1225 (9th Cir. 2000) (quoting *Hibernia Nat'l Bank v. Administracion Cent.

20    Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir.1985)).  The final factor therefore weighs in

21    favor of setting aside the entry of default.

22

23

24

1

## V      CONCLUSION

2        Having determined that all three factors weigh in favor of setting aside the entry of

3   default, and considering the preference that cases be resolved on their merits, the Court finds

4   good cause to set aside the Clerk's entry of default.  Accordingly, the Court GRANTS

5   Defendant's motion to set aside the entry of default (Dkt. No. 32) and DENIES Plaintiff's second

6   motion for default judgement (Dkt. No. 20) as moot.

7        Dated this 14th day of August, 2024.

8

9



10        David G. Estudillo
          United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24