UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAYDEN SUNDBERG,<br><br>    Plaintiff,<br>    v.<br><br>SHELTON SCHOOL DISTRICT NO. 309,<br><br>    Defendant. | CASE NO. 3:23-cv-05717-DGE<br><br>ORDER ON MOTION TO ACCESS EDUCATION RECORDS (DKT. NO. 58) |

**I    INTRODUCTION**

This matter comes before the Court on the Parties' joint motion to access education records. (Dkt. No. 58.) The motion requests that the Court authorize Shelton School District, the Defendant, to disclose certain student education records to Plaintiff Jayden Sundberg, subject to the protective order that has already been entered by the Court. (*Id*. at 1.) (*See* Dkt. No. 61, *Stipulated Protective Order*.) Specifically, the Parties request that the Court authorize Defendant to disclose information and education records responsive to Plaintiff's discovery requests in this

1  matter on all non-parties who were served with notice of the joint motion to access education

2  records. (Dkt. No. 58-1 at 1). For the foregoing reasons, the motion is GRANTED IN PART.

## II    BACKGROUND

Plaintiff brings suit against his former school district for negligence and violations of Washington Law Against Discrimination ("WLAD") and the Americans with Disabilities Act ("ADA"). (Dkt. No. 52 at 10–17.) Plaintiff is diagnosed with Autism Spectrum Disorder, Intermittent Explosive Disorder, and Attention-Deficit/Hyperactivity Disorder and studied according to an Individualized Education Program ("IEP") while enrolled at Shelton High School. (*Id*. at 4.) Plaintiff openly identified as queer and gender fluid while at Shelton High School. (*Id*.)

In relevant part, the Complaint alleges that Defendant violated the WLAD and the ADA by "treating Sundberg—and his complaints of harassment—differently based on his disabilities and sexual orientation." (*Id*. at 3.) Plaintiff claims that the District "did not enforce its rules and policies against harassment, intimidation, and bullying when other [students]," including a student who assaulted Sundberg with a knife, bullied Sundberg "based on his sexual orientation and physical attributes." (*Id*. at 10.) Defendant denies Plaintiff's allegations and asserts that "Mr. Sundberg cannot establish that he was treated in a manner different than the treatment provided to students outside his protected classes." (Dkt. No. 58 at 4) (quoting Dkt. No. 32 at 10).

On November 18, 2024, the Parties jointly moved for "an Order authorizing the District to disclose certain student education records to Sundberg in discovery, subject to a protective order." (Dkt. No. 58 at 1.) The Parties state that "a central issue in this case is whether the District handled Sundberg's reports of harassment and bullying differently than reports by other

students who did not share his protected characteristics." (Dkt. No. 58 at 8.)  Indeed, it is common for plaintiffs to rely on so-called "comparator evidence" when bringing antidiscrimination lawsuits, both under the WLAD and federal antidiscrimination law.  Under the WLAD, "[p]roof of different treatment by way of comparator evidence is relevant and admissible[.]"  *Johnson v. Chevron, U.S.A., Inc.*, 244 P.3d 438, 446 (Wash. Ct. App. 2010).  Likewise, a plaintiff may "point to comparators as circumstantial evidence of unlawful discriminatory intent," when bringing federal discrimination claims.  *Ballou v. McElvain*, 29 F.4th 413, 424–25 (9th Cir. 2022).  Here, the Parties confirm that "[t]he comparator evidence sought through Sundberg's discovery requests is not just a mechanism that may be used to prove discriminatory disparate treatment; it is also relied upon by the District in support of its defense."  (Dkt. No. 58 at 8.)

       Defendant subsequently served notice of the motion, the proposed order, and the protective order entered by the Court (Dkt. No. 61) on the parents of the students identified in Plaintiff's initial disclosures and the parents of students whose names appeared in records requested by Plaintiff in written discovery.  (Dkt. No. 63 at 1–2.)  The notice informed parents that if they wished to object to the production of the educational records and information, they could send written objection to Defendant by January 17, 2025.  (*Id*. at 36.)  Twelve parents and/or guardians objected to the production of the educational records and information.  (*See id*. at 3, 38–51; Dkt. No. 67 at 1.)  The Court then requested supplemental briefing, which asked the Parties to explain why the twelve educational records at issue met the relevant legal standard for disclosure.  (Dkt. No. 69 at 4–5.)  Plaintiff and Defendant submitted supplemental briefing and the matter is now ripe for disposition.  (*See* Dkt. Nos. 71, 71.)

## III    DISCUSSION

**A.  Legal Standard**

The Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g(b)(2)(B), provides that:

> No funds shall be made available . . . to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records . . . unless . . . such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency.

Thus, "FERPA does not prohibit the disclosure of educational records: FERPA instead penalizes the inappropriate disclosure of such information." *Jones v. Espanola Mun. Sch. Dist.*, No. CV 13-741 RB-WPL, 2016 WL 10257481, *2 (D.N.M. May 13, 2016).  Nevertheless, federal courts have consistently required parties seeking disclosure of education records to meet a "significantly heavier burden" than exists with respect to discovery of other kinds of information because of the strong privacy interests of the students involved.  *See Jun Yu v. Idaho State Univ.*, No. 4:15-CV-00430-REB, 2017 WL 1158813, *2 (D. Idaho Mar. 27, 2017) (collecting cases); *Jones*, 2016 WL 10257481, at *2–*3 (collecting cases).[1]

Specifically, courts have coalesced around the requirement that the party seeking the disclosure must "demonstrate a genuine need for the information that outweighs the privacy interest of the students." *Jones*, 2016 WL 10257481, *3 (citing *Rios v. Read*, 73 F.R.D. 589, 598

---

[1] Federal Rule of Civil Procedure 26(b)(1) establishes: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."

(E.D.N.Y. 1977)); *see also Doe v. Berkeley Unified Sch. Dist.*, No. C 20-08842 WHA, 2021 WL 1866197, *1 (N.D. Cal. May 10, 2021). "Courts usually find that a party has met the burden when it would be 'impossible to prove' the claim without such records." *Jones*, 2016 WL 10257481, at *3 (quoting *Rios*, 73 F.R.D. at 599). For example, in *Davids v. Cedar Falls Community Schools*, the Court concluded that the plaintiff's "allegations that the school was engaged in a practice of disparate discipline of minority and non-minority students (thereby treating a racially hostile environment) [could] only be proven if she is granted access to the disciplinary records and incident reports of the students involved." No. C-96-2071, 1998 WL 34112767, *3 (N.D. Iowa Oct. 28, 1998).

Accordingly, the Parties must demonstrate why their need for the information in the student records "outweighs the students' privacy interests" because it is necessary to prove disparate treatment. *Jun Yu*, 2017WL 1158813, at *2.

**B.  Analysis**

Of the twelve objections filed, seven objections pertain to students whose names appear in records maintained by the district related to harassment, intimidation, and bullying complaints. (Dkt. No. 70 at 1–2; Dkt. No. 63 at 32–33). The spreadsheet in question does not include information about specific incidents or complaints, but rather lists student's names, dates of birth, guardians, addresses, and phone numbers of the students identified as "victim" and "aggressor." (Dkt. No. 63 at 32–33.) The sheet also lists the sexual orientation of some students. (*Id*.)

Four objections pertain to records regarding the District's confiscation of weapons from students. These records are contained in a spreadsheet that provides the names of students involved in weapon confiscation across the entire school district—elementary, middle, and high

school. (*Id*. at 2; Dkt. No. 63 at 13–30.) The sheet also includes short narratives of the incidents and their outcome history. (*Id*.)

Finally, one objection pertains to a student, O.A., who was identified by Defendant in its initial disclosers as a person with knowledge and records related to the students involved in the incident from which this case arose. (Dkt. No. 63 at 37.)

Defendant argues that the disclosure of the "harassment/intimidation/bullying spreadsheet" "does not outweigh the privacy interests of the students," as the sheet does not provide dates or narratives. (Dkt. No. 70 at 3.) "To the extent Plaintiff wishes to argue that [Defendant's] policies and procedures relative to HIB events/complaints were somehow deficient, [Defendant] proposes that any such argument can be made with statistics," Defendant asserts. (*Id*.) As for the weapon confiscation spreadsheet, Defendant argues it is not relevant because the sheet "addresses different incidents occurring at different schools with different aged students, at different times." (*Id*. at 4.) Plaintiff responds that statistics are insufficient and that "Sundberg should be allowed to contact and interview students who were involved in past HIB incidents" based on the information in the spreadsheet. (Dkt. No. 71 at 3.) Similarly, Plaintiff states that "[s]tatistics alone would not allow Sundberg to ascertain the necessary context to evaluate how the District responds to [weapons] policy violations." (*Id*. at 4.)

Both Plaintiff and Defendant agree that O.A. is likely to have discoverable information. Plaintiff and Defendant also agree that it is not necessary to release all of O.A.'s records—the student's name, contact information, and student statement made regarding the incident at issue in this case are sufficient, they stipulate. (Dkt. Nos, 70 at 2–3, 71 at 2–3.)

As Plaintiff summarizes: "the subject matter of this action involves whether a school district treated a student—and his complaints of harassment—differently based on his disabilities

and sexual orientation." (Dkt. No. 71 at 1.) Therefore, how Defendant treated non-disabled and non-queer identifying students is a dispositive question sufficient to warrant production of responsive records and materials. There is limited information about individual students in the harassment/intimidation/bullying spreadsheet beyond student's names and the contact numbers of a parent or guardian. Accordingly, the disclosure of the spreadsheet is warranted. As for the weapons confiscation spreadsheet, the Court finds that the production of records regarding incidents occurring at Shelton High School outweigh the privacy interest of the students involved. Plaintiff does not demonstrate a genuine need for information about weapons confiscations at other schools. Finally, the Court agrees with the Parties that O.A.'s name, contact information, and student statement are appropriate for disclosure in this matter.

## IV     CONCLUSION

Accordingly, the Court ORDERS that:

1. Defendant is authorized to disclose information and education records responsive to Plaintiff's discovery requests in this case for all non-objecting nonparties who were served with notice of the motion to access education records.

2. Defendant is authorized to disclose the "harassment/intimidation/bullying spreadsheet."

3. Defendant is authorized to disclose the incidents on the "weapons confiscation spreadsheet" that occurred at Shelton High School. The rest of the sheet must be redacted.

4. Defendant is authorized to disclose the name, contact information, and student statement of "O.A." Defendant is not authorized to disclose any additional education records belonging to O.A.

5. For any current or former students subsequently identified as having information or education records responsive to Plaintiff's discovery requests in this case, Defendant shall notify the individuals that their information or education records are subject to disclosure; provide them a copy of this Court's orders pertaining to discovery; and advise them that they have thirty days to inform Defendant of any objection to the production of such information. Upon the completion of the thirty-day period, Defendant shall certify to the Court notice was provided and file any objections for the Court to consider or inform the Court no objections were received. Thereafter, the Court will determine whether the additional records should be produced.

Dated this 7th day of March, 2025.

David G. Estudillo
United States District Judge